IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH  CENTRAL DIVISION

| | |
|---|---|
| MUD BUDDY, LLC, a Utah Limited Liability Company,<br><br>　　　Plaintiff – Counterclaim Defendant,<br><br>v.<br><br>GATOR TAIL, LLC, a Louisiana Limited Liability Company,<br><br>　　　Defendant - Counterclaimant. | **MEMORANDUM DECISIONAND ORDER DENYING IN PART AND GRANTING IN PART GATOR TAIL'S AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br><br>Case No. 2:08-CV-0972-DN-PMW<br>District Judge David Nuffer |

Before the court is Gator Tail's Amended Motion for Partial Summary Judgment. [Docket no. 95].  Gator Tail moves this court for summary judgment against Mud Buddy's claims of literal patent infringement regarding claims 1 through 20 of the United States Patent No. 6,302,750 and claims 14, 15 through 16, and 19 of the United States Patent No. 6,361,388 as well as summary judgment declaring invalid claims 1 and 2 of United States Patent No. 6,361,388.  The court, having reviewed the parties' submissions and hearing oral arguments on the matter on December 14, 2012, hereby GRANTS in part Gator Tail's Amended Motion for Partial Summary Judgment rendering judgment that Mud Buddy's claims 1 and 2 of the '388 Patent are invalid.  Otherwise, Gator Tail's motion is denied.

# TABLE OF CONTENTS

FACTS ............................................................................................................................. 2

CONCLUSIONS OF LAW .............................................................................................. 8

    Literal Patent Infringement ....................................................................................... 8

        a.   Oriented to Stop ('750 patent) or Restrict ('388 patent) ................................ 9

        b.   Pressurization Member ................................................................................. 11

        c.   Pressurization Chamber or Lubricant Chamber .......................................... 11

        d.   Pressurization Gap ....................................................................................... 13

        e.   Claim 14 of the '750 Patent Does Not Require Four Seals .......................... 14

    Patent Invalidity ....................................................................................................... 15

ORDER ......................................................................................................................... 17

# FACTS

Because Gator Tail failed to state facts in its summary judgment motion, the court has worked from Mud Buddy's statement of facts in its opposition memorandum, which were unaddressed other than by argument in Gator Tail's reply memorandum. Most of Mud Buddy's facts are not material to the issues decided by this motion and the facts as stated here are severely reduced from those Mud Buddy asserted because declarations of Glenn Freeman and Richard Salant were reduced by striking.[1] Nonetheless, the summary of facts from which the court worked is contained in this order.

In the process of preparing this draft order Gator Tail has disputed certain fact statements not disputed at the hearing and the parties have also apparently agreed to or acquiesced in some fact statements not stated in the briefing or at the hearing. This order largely ignores those tardy

---

[1] Memorandum Decision and Order Granting in Part Defendant's Motion to Strike the Plaintiff's Exhibits Opposing Partial Summary Judgment, docket no. 146, filed May 1, 2013.

disputes and post-hearing facts.  Importantly, the facts recited here are the undisputed facts for purposes of this motion and are not findings under Fed. R. Civ. P. 56(g).

1.      The inventor of the patents-in-suit, Mr. Glenn Foreman, received years of training in engineering and the mechanical arts through schooling, military training, and on-the-job work. [Deposition of Glenn Foreman ("Foreman Depo.") at 53-58 and 77-79].

2.      In 1994, while still employed by the federal government, he began his current business, Mud Buddy, with his wife Sharleen Foreman.  That venture focused on Mr. Foreman's passion, outdoor recreation, and in particular marine products for the hunting and fishing enthusiast.  Those marine products included marine mud motors.  [Foreman Depo. at 60-61, 115].

3.      In the mid to late 1990's, Mr. Glenn Foreman became frustrated with problems he encountered in the sealing system of the marine mud motors he was manufacturing.  The conventional sealing system typically consisted of a pair of one-way lip seals placed near the propeller end of the drive assembly—the lip of an inner seal facing the transom and the lip of an outer seal facing the propeller.  Mr. Foreman observed that when used in muddy and silty environments, the traditional seal system of marine motors was subject to significant and rapid wear by contaminants in the environment.  This wear resulted in the intrusion of mud, water, and other debris into the drive tube of the motor.  This intrusion resulted in unwanted costs and repairs to the mud motors.  In particular, the outer seal would very quickly wear out allowing contaminants to pass by the outer seal and begin to wear on the inner seal resulting in its ultimate failure as well.  [Deposition of Glenn Foreman (Foreman Depo.), docket no. 98-1 at 124-126, 133-135; Declaration of Glenn Foreman ("Foreman Dec."), docket no. 100 ¶ 3]

4.      Over the course of thousands of hours of experimentation and design Mr.

Foreman discovered that by arranging a plurality of seals towards the propeller end of the drive unit such that an inner seal permitted an amount of lubricant to continually pass by the inner seal and in between the inner seal and outer seals, a barrier was created between the inner and outer seal that prevented the intrusion of contaminants from entering the drive tube.  [Foreman Depo. at 123-126, 133-135; Foreman Dec.  ¶¶ 3, 4.

5.      Mr. Foreman testified that in his seal system, lubricant is placed within the drive assembly (i.e., drive tube, seal assembly, etc.) of the marine motor to permit the rotation of the drive components that turn the boat propeller.    [Foreman Depo. at 123-126, 133-135; Foreman Dec. ¶¶ 3, 4].

6.      Mr. Foreman testified that, because of the wear and outside pressures exerted on the outer seal, facing the outer seal towards the propeller or facing the seal towards the transom had similar results.  Indeed, in some of Mud Buddy's products, the outer seal is a one-way polymeric lip seal that faces the transom and in other Mud Buddy products, the outer seal is a one-way polymeric lip seal that faces the propeller.  Mr. Foreman also testified that the inner seal in all of Mud Buddy's products is a one-way lip seal that faces the propeller.  [Foreman Depo. at 123-126, 130, 133-135; Foreman Dec. ¶¶ 4, 8].

7.      Mr. Foreman sought protection of his invention in 2000 and 2001 and was eventually awarded two patents from the United States Patent and Trademark Office; U.S. Patent No. 6,302,750 and U.S. Patent No. 6,361,388.

8.      For purposes of illustrating certain aspects of an example embodiment of Mr. Foreman's invention, the lower portion of the drive assembly of his motors contains a drive shaft (26) within a drive assembly housing (42) and drive tube (16).  Towards the distal end of the drive assembly, a roller bearing (40) and two seals are disposed within the drive assembly

housing (42). Contrary to conventional design, the inner seal (34) of the drive assembly is placed such that it allows lubricant contained within the drive assembly housing (42) to move past the inner seal (34) and into an area between the inner seal (34) and the outer seal (32). The lubricant within the assembly housing (42) is driven, at least in part, by the rotation of the roller bearing (40). The outer seal (32) acts to stop or restrict fluid from flowing out of the area between the inner and outer seals where the lubricant then becomes pressurized. Over time, the pressurized lubricant within the lubricant chamber becomes a dynamic barrier to entry of any contaminants (i.e., water or particulate matter) to the drive assembly housing (42). While in operation, the pressurized lubricant within the area between the inner and outer seals (i.e., the lubricant chamber) sacrifices a portion of lubricant by being "pushed" past the inner seal. The assembly functions to stop or restrict contaminants from entering the drive assembly housing, while maintaining sufficient lubricant within the drive assembly. [See FIG. 4 and col. 6 of '750 Patent; FIG. 4 and cols. 6-7 of '388 Patent.



**Fig. 4**

9.      Through the years, Mr. Foreman's seal system has been constructed in several ways, all within the scope of his patents. [Foreman Dec. ¶¶ 4, 8, Ex. B].



Drive Shaft    Bearings    Inner Seal    Outer Seal        Drive Shaft    Bearings    Inner Seal    Outer Seal

10.    Sometime in 2004, the Defendant in this case, Gator Tail, began selling its own mud motor.  [Deposition of Blaine Broussard ("B. Broussard Depo.") at 92, docket no. 98-4].

11.    Originally, the seal assembly of Gator Tail's mud motor comprised a pair of lip seals in the conventional marine seal manner—an inner seal facing towards the transom of the boat and an outer seal facing towards the propeller.  [Foreman Dec. ¶ 13; Foreman Depo. at 194-196].

12.    Sometime in 2005, Gator Tail changed the design of its seal system so that the inner seal of its pair of lip seals was facing away from the transom of the boat.  [B. Broussard Depo. at 92].

13.    Gator Tail arrived at its current seal design because it "worked best for them." [B. Broussard Depo. at 59, 112].

14.    The drive assembly on Gator Tail's current mud motor comprises a drive assembly having an upper end, a lower end, and a housing cavity.  A bearing is disposed about a drive shaft of the drive assembly and is located near the upper end of the lower portion of the drive assembly.   Below the bearing (toward the propeller) is an inner seal and an outer seal. Both the inner seal and the outer seal in Gator Tail's mud motor are one-way lip seals with the lips facing in the direction of the propeller.  A space is located between the inner seal and outer

seal which contains lubricant.  [Gator Tail memo at 4, Deposition of Kyle Broussard at 162, docket no. 98-5; Deposition of Hoyt Louvier at 75, docket no. 98-6].

15.     Mud Buddy's expert witness in this case, Dr. Richard Salant, has been a professor of mechanical engineering since 1968, having received his doctorate from the Massachusetts Institute of Technology in 1967 and having worked on seals his entire professional career. [Salant Depo. at 10, 39, docket 98-7; see also Exhibit 100 to Salant Depo].

16.     Dr. Salant testified at his deposition that in the case of two lip seals as claimed in the Mud Buddy patents, the outer lip seal can restrict lubricant flow regardless of the direction it faces.  [Salant Depo. at 19-20; Declaration of Richard Salant ("Salant Dec.") ¶¶ 4-12, docket no. 98-8].

17.     Moreover, Dr. Salant testified that the outer seal in Gator Tail's system functions to restrict or stop that lubricant flow after the outer seal has been worn and can no longer pump efficiently.  The outer seal acts like a bushing, stopping the flow of lubricant by partially blocking the flow passage.  The inner seal, which is not worn by any of the contaminants present outside the seal system, pumps lubricant into the space between the inner and outer seal.  [Salant Depo. at 24-32, 86; Salant Dec. ¶¶ 8-12].

18.     Gator Tail itself concedes that its seal system restricts lubricant flow:

Q. So when I look at those seals in 3, you're saying the lips on both of them are pointed toward the prop?
A. That is correct.
Q. Okay. And I would assume, though, that there is at least some function of holding some of that lubricant in; otherwise it would all just come out?
A. About the same function as sticking a rag in a hole that water is coming out; it will restrict it, it will restrict it. It's not going to stop it. [K. Broussard Depo. at 162, Ex. E]

19.     Dr. Salant also provided testimony as to how roller bearings generate pressure between the rolling element and the race. [Salant Depo. at 90-91].

20.     Dr. Salant did not base his testimony on any quantitative testing, measurement, or observation of Gator Tail's accused instrumentalities. Similarly, Mr. Foreman did not base his testimony on any quantitative testing, measurement, or observation of Gator Tail's accused instrumentalities.

## CONCLUSIONS OF LAW

### *Literal Patent Infringement*

"Literal infringement of a claim exists when every limitation recited in the claim is found in the accused device, i.e., when the properly construed claim reads on the accused device exactly." *Johnston v. Ivac Corp.*, 885 F.2d 1874, 1580 (Fed. Cir. 1989).

In a suit claiming patent infringement, a court's literal infringement analysis takes place in two steps:  the court first construes the patent claims that are allegedly infringed and then compares the properly construed claims to the allegedly infringing device or method. *Cybor Corp. v. FAS Technologies, Inc.*, 138 F.3d 1448, 1453 (Fed. Cir. 1998) (en banc): *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd* 517 U.S. 370 (1996).  The court has already construed certain terms in the patents' claims.  [See, docket no. 94].  The motion currently before the court, therefore, focuses on the infringement analysis, which is a question of fact. *Intervet America, Inc. v. Kee-vet Laboratories, Inc.*, 887 F.2d 1050, 1053 (Fed. Cir. 1989).

The Federal Rules of Civil Procedure are applied in patent cases the same way that they are applied in any other type of case. *SRI International v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1116 (Fed. Cir. 1985).  Hence, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there are no genuine issues as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

As the plaintiff, Mud Buddy bears the burden to prove infringement. Gator Tail, the movant, bears the burden of demonstrating the absence of any genuine issues of material fact. *Cooper v. Ford Motor Co.*, 748 F.2d 677, 679 (Fed. Cir. 1984). The court must view the evidence in the light most favorable to Mud Buddy, and draw all reasonable inferences in its favor. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Gator Tail's memorandum in support of its motion for summary judgment focuses on several elements in certain of the claims present in the '750 and '388 Patents, which it asserts its products do not have. It argues, therefore, that its products cannot literally infringe the claims of those patents. For purposes of this Order, those elements are grouped into the following four general categories: (a) seals oriented to stop or restrict flow, (b) pressurization member, (c) pressurization chamber or seals oriented to capture pressurized lubricant, and (d) pressurization gap. Because other claim elements from the '750 or '388 Patents were not put at issue in Gator Tail's moving papers, they are not addressed herein.

**a. Oriented to Stop ('750 patent) or Restrict ('388 patent)**

Claim 14 of the '388 Patent and claims 1, 7, 14 of the '750 Patent each contain a limitation related to seals being oriented to stop (as in the '750 patent) or restrict (as in the '388 patent) flow from the drive assembly housing. Independent claim 17 of the '750 patent contains the step of "preventing lubricant from flowing out of the assembly housing by orienting an outer one-way seal in the lower end of the assembly housing."

This court has construed the claim elements in question, namely:

The phrase "oriented to stop lubricant flow from the housing cavity" (primarily present in the '750 Patent) means the orientation of the outer seal to stop lubricant flow from exiting the lower end of the drive assembly housing; and

The term "outer seal" (within the '388 Patent) shall mean a seal located in the lower end of an enlarged drive assembly housing oriented to restrict fluid from flowing in a direction from the upper end to the lower end of the enlarged drive assembly housing.

[Markman Order at 9, 15, docket no. 94].

In its moving papers, Gator Tail asserts that the claim term "oriented" when specifically applied to lip seals, in order for the outer seal to stop or to restrict fluid flow from exiting the drive unit, means the outer seal must be *physically positioned* so that the lip of that outer seal is facing the transom. The court discussed at length with counsel its view that the claim construction does not speak of orientation in a physical sense, but in a functional sense because there is no requirement of a lip seal or of a direction of a lip of such a seal; only that a seal be oriented to stop or restrict flow.

With respect to the functional limitations required by the claims compared to Gator Tail's seal system, Dr. Salant testified that the outer seal in Gator Tail's system functions to restrict or stop lubricant flow after the outer seal has been worn and can no longer pump efficiently. He said the outer seal acts like a bushing, stopping the flow of lubricant by partially blocking the flow passage. The inner seal, which is not worn by any of the contaminants present outside the seal system, pumps lubricant into the space between the inner and outer seal. Gator Tail itself concedes that its seal system restricts lubricant flow.

Given this testimony about the function of the Gator Tail seals, it is not possible to grant summary judgment on this issue. "Oriented" to stop (as in the '750 patent) or "oriented" to restrict (as in the '388 patent) is a description of function not physical direction of the lips of a lip seal. And Mud Buddy has provided evidence that Gator Tail's seals are "oriented"

functionally to restrict or stop flow.  Accordingly, Gator Tail's motion for summary judgment of non-infringement on this point is denied.

**b.  Pressurization Member**

Gator Tail also asserts that it does not infringe claims 2, 3, 4, and 18 of the '750 Patent because its mud motors lack a pressurization member or do not have pressure that is generated by a roller bearing, and because Mud Buddy has no evidence of such.  In the Markman Order, this court construed the term "roller bearing" to mean:

> A bearing in which the main load is transferred through rolling contact rather than in sliding contact, and which generates hydraulic pressure.  [Markman Order at 9].

Dr. Salant testified that he believed the Foreman patents generate pressure "slightly above atmospheric pressure." [Salant depo at 170].  Gator Tail has purportedly done no testing or ever assessed whether there is any pressure generated by its roller bearing and therefore cannot state whether pressure exists.  [K. Broussard Depo. at 164].  Neither Dr. Salant nor Mr. Foreman ever measured or did any kind of quantitative measurement for pressure in an accused instrumentality. The court has stricken Mr. Foreman's evidence regarding pressure, including his declaration and the video attached thereto.  The court finds Dr. Salant's evidence thin because it speaks speculatively as to principles and theory but sufficient to prevent entry of summary judgment.  Mud Buddy lacks substantial reliable testing and observation on the accused instrumentalities.  Because the issue of pressurization is important to so many claims the court has permitted Mud Buddy to provide competent and admissible evidence from Mr. Foreman showing quantitative measurement of pressure in the Gator Tail instrumentalities.  Subject to Mr. Foreman's evidence and Gator Tail's challenges thereto, the court denies summary judgment on this point at this time.

**c.  Pressurization Chamber or Lubricant Chamber**

Gator Tail next argues that certain claims in the Mud Buddy patents are not infringed by the Gator Tail motor because the lubricant-containing area between its inner and outer seals is not pressurized.  "Lubricant chamber" is a limitation in dependent claim 5 (and, correspondingly, dependent claim 6), dependent claim 9, and independent claim 14 (and, correspondingly, dependent claims 15-16) of the '750 Patent. Independent claim 17 of the '750 Patent merely uses the term "chamber."  "Pressurized lubricant" is a limitation in the '750 Patent in independent claim 1 (and, correspondingly, dependent claims 2-6), and dependent claim 12 in the '750 Patent. Independent claim 14 (and, correspondingly, dependent claims 15-16) specify "pressurized grease."  Dependent claims 9 and 17 speak in terms of "pressurizing" the chamber, and dependent claims 10, 18, and 19 specify the act to "pressurize lubricant."  Claim 1 of the '750 Patent contains the claim phrase "area, formed between the inner and outer seals, configured to contain pressurized lubricant."

> In the Markman Order, this court construed the term "lubricant chamber" to mean:
>
> A lubricant chamber that is located between inner and outer seals and which chamber contains pressurized lubricant that has flowed past the inner seal.

[Markman Order at 11, docket no. 94].  The court also construed the term "pressurized lubricant" to mean:

> Lubricant at a pressure above the pressure acting on the outer seal from outside the drive housing.

Finally, the court construed the phrase "area, formed between the inner and outer seals, configured to contain pressurized lubricant" to mean:

> An area or space located between the inner and outer seals capable of containing a pressurized lubricant.

[Markman Order at 5, docket no. 94].

Gator Tail has conceded the lubricant flows past the inner seal and between the inner and

outer seals. [Gator Tail memo at 2, docket no. 96]. While it has done no analysis of its own and does not know if pressure is generated between the seals [Gator Tail memo at 5, docket no. 96], Gator Tail disputes Mud Buddy's assertion that pressure does exists between the seals.  As with "pressurization member" above, the court finds Mud Buddy's evidence opposing this point to be thin, but sufficiently present to bar summary judgment, and because of the importance of the pressurization issue, Mud Buddy is allowed an additional opportunity to provide competent and admissible evidence from Mr. Foreman showing quantitative measurement of pressure in the Gator Tail instrumentalities.  Subject to Mr. Foreman's evidence and Gator Tail's challenges thereto, the court denies summary judgment on this point at this time.

### d. Pressurization Gap

Gator Tail next argues that it does not infringe certain claims of the Mud Buddy patents because its drive assembly does not have a pressurization gap.  "Pressurization gap" is mentioned in dependent claim 4 (depending from independent claim 1), claim 10 (depending from independent claim 7), independent claim 14, and dependent claims 18 and 19 (both of which depend from independent claim 17).  The court construed the term "pressurization gap" to mean:

> The gap formed between the bearing and the inner seal which gap provides an area for pressure to build.

[Markman Order at 12, docket no. 94].

As discussed in greater detail above, Dr. Salant provided testimony regarding how pressure is generated in the subject seal systems.  [Salant Depo. at 22-23; *see also* Salant Dec. ¶¶ 9-13]  As with "pressurization member" above, the court finds Mud Buddy's evidence opposing this point to be thin, but sufficient to present a genuine issue of material fact, and because of the importance of the pressurization issue, allows Mud Buddy an additional

opportunity to provide competent and admissible evidence from Mr. Foreman showing

quantitative measurement of pressure in the Gator Tail instrumentalities.  Subject to Mr.

Foreman's evidence and Gator Tail's challenges thereto, the court denies summary judgment on

this point at this time.

### e. Claim 14 of the '750 Patent Does Not Require Four Seals

Gator Tail also argues that its mud motors do not infringe claim 14 of the '750 Patent,

because that claim requires four seals.  The court finds that the subject claim does not require

four seals.  Rather, only two seals are referenced therein.

Claim 14, in its entirety reads:

> A drive assembly for a marine mud motor, comprising:
> (a) a drive assembly housing having an upper end, lower end, and housing cavity; and
> (b) a roller bearing, disposed in the drive assembly housing;
> (c) a first one-way seal, mounted into the lower end of the drive assembly housing, oriented to stop lubricant flow from the housing cavity;
> (d) a second one-way seal, between the outer seal and the roller bearing, oriented to allow lubricant to flow away from the roller bearing;
> (e) a lubricant chamber between the outer seal and the inner seal, wherein the lubricant chamber is pressurized by lubricant flowing past the inner seal and the seals prevent lubricant from leaving the chamber during operation periods; and
> (f) a pressurization gap, between the inner seal and the roller bearing, configured to provide a lubricant pressurization area for the roller bearing, wherein the pressurized grease can pass by the inner seal.

See, col. 8, lines 4-24 of the '750 Patent.  Gator Tail asserts that because the patentee chose to

use the terms first one-way seal; second one seal; inner seal; and outer seal, it must have intended

the claim to require *four* different seals based on the doctrine of claim differentiation.  The court

disagrees.

Claim 14 indicates that "the outer seal" is a specific reference back to "a first one-way

seal" and "the inner seal" refers specifically back to "a second one-way seal. The claim indicates

that the "first one-way seal, mounted into the lower end of the drive assembly" referenced in

element (c) of claim 14 is the same as the subsequent "outer seal" referenced in element (d).

Furthermore, "a second one-way seal, between the outer seal and the roller bearing" is the same

as "the inner seal" of element (e).  Accordingly, claim 14 only requires two seals to be present.

The request for summary judgment that claim 14 requires four seals is therefore also denied.

### *Patent Invalidity*

Gator Tail moved for summary judgment that claims 1 and 2 of U.S. Patent 6,361,388 are

invalid because those claims are anticipated by at least six prior art patents.[2]  "A moving party

seeking to invalidate a patent at summary judgment must submit such clear and convincing

evidence of invalidity so that no reasonable jury could find otherwise."  *Eli Lilly & Co. v. Barr

Labs.*, 251 F.3d 955, 962 (Fed. Cir. 2001).  For invalidity by anticipation, a claim is anticipated

"if each and every limitation is found either expressly or inherently in a single prior art

reference." *King Pharms., Inc. v. Eon Labs, Inc.*, 616 F.3d 1267, 1274 (Fed. Cir. 2010)(citing

*Celeritas Techs. Ltd. v. Rockwell Int'l Corp.*, 150 F.3d 1354, 1360 (Fed.Cir.1998)).

The party alleging invalidity has the burden of producing evidence of prior art

anticipating the claimed invention. *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1327

(Fed. Cir. 2008).  Then, the patent-holder has the burden of going forward with evidence that the

asserted claim is entitled to the benefit of a filing date preceding the alleged prior art.  The

patent-holder must show the existence of an earlier application, and explain why the written

description in the earlier application supports the claim. *Id.*

Claim 1 of the '388 patent claims:

A drive assembly for a marine mud motor comprising:

---

[2] U.S. Patents 4,854,903 (Sirois); 4,832,638 (Sirois); 4,946,410 (Haman); 4,728,308 (Weismann); 4,981,452 (Grinde); and 4,544,362 (Arneson).

a) an elongate drive tube, configured for rotatably receiving a drive shaft therethrough, wherein a lower end of the drive tube includes;

b) a drive assembly housing, having a lower end;

c) a bearing, in rotational communication between the drive assembly housing and the drive shaft; and

d) a seal, contained within the drive assembly housing, configured to restrict contaminants from entering the drive assembly housing.

Dr. Salant admitted he saw nothing in claim 1 that was material outside of the prior art. [Docket Entry #96-5 at 124:7-125:23]. Further, Gator Tail asserts that each element in claim 1— the drive shaft tube, a drive assembly housing, a bearing, and a seal—is found in the numerous patents preceding the '388 patent's provisional application of 1999. The U.S. Patents 4,854,903 (Sirois); 4,832,638 (Sirois); 4,946,410 (Haman); 4,728,308 (Weismann); 4,981,452 (Grinde); and 4,544,362 (Arneson) all precede the '388 patent by over a decade and all anticipate each element of claim 1. None of these patents were considered by the Patent Examiner. Gator Tail also asserts that claim 1 of the '388 patent is also obvious in light of that patent's specification. The specification identifies the "conventional" drive configuration as having claim 1's elements of (1) a drive shaft tube, (2) a drive assembly housing, (3) a bearing, and (4) a seal.

The Plaintiff responded by citing the standard for proving invalidity as "clear and convincing evidence," but offered no evidence to counter Gator Tail's evidence of six prior art patents. Even though "clear and convincing evidence" is required, the party seeking to avoid a motion for summary judgment must still present evidence tending to create a genuine issue of material fact. *See N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964); *Otteson v. U.S.*, 622 F.2d 516, 520 (10th Cir. 1980). Because the Plaintiff presented no contrary evidence as to the invalidity of claims 1 and 2 of the '388 patent, it has not raised any genuine issue of material fact as to these issues and summary judgment is proper. Based on the parties' respective summary

judgment evidence the prior art stated above and cited by Gator Tail fully anticipates every element of claim 1 of the '388 patent.

Claim 2 of the '388 patent adds a seal cap to claim 1.  The seal cap is found in Sirois '903; Sirois '638; Haman '410; and Weismann '308, each of which also has all the claim 1 elements. Each of these prior art patents precede the '388 patent by over a decade, all anticipate claim 2, and none were considered by the Patent Examiner.

Claims 1 and 2 of U.S. Patent 6,361,388 patent are anticipated and therefore invalid. Plaintiff has no cause of action against Gator Tail for infringement of claims 1 and 2 of the '388 Patent.

## ORDER

IT IS HEREBY ORDERED that Gator Tail's Amended Motion for Partial Summary Judgment.  [Docket no. 95] is GRANTED IN PART adjudicating that Plaintiff has no cause of action against Gator Tail for infringement of claims 1 and 2 of the '388 Patent.  Otherwise, the motion is denied.

Dated May 1, 2013.

BY THE COURT:

David Nuffer
United States District Judge

17