IN THE UNITED STATES DISTRICT COURT
For the District of Utah, Central Division

| | |
|---|---|
| MUD BUDDY, LLC, a Utah Limited Liability Company,<br><br>           Plaintiff<br><br>v.<br><br>GATOR TAIL, LLC, a Louisiana Limited Liability Company,<br><br>           Defendant | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO STRIKE MUD BUDDY'S EXHIBITS OPPOSING SUMMARY JUDGMENT**<br><br>Case No. 2:08-CV-00972 DN<br><br>District Judge David Nuffer |

The court has reviewed and considered the parties' briefing related to Gator Tail's Objections to Mud Buddy's Exhibits Opposing Summary Judgment and Motion to Strike.[1] Having considered the arguments and associated exhibits, and after considering the record in this case, the court strikes Dr. Salant's June 7, 2013 declaration in its entirety,[2] Mr. Foreman's January 11, 2013[3] and June 7, 2013[4] declarations (other than those sections of his declaration discussing the history and design of the Mud Buddy motors), and will not permit use of the Foreman videos and experiments at trial or to oppose Gator Tail's motion for summary judgment.

---

[1] Docket no. 178.

[2] Docket no. 167-8.

[3] Docket no. 123.

[4] Docket no. 167-13.

**Table of Contents**

Background ........................................................................................................................................3

A. The Foreman video experiments are inadmissible. ......................................................................4
      1.      Mr. Foreman lacks expertise in designing tests to measure fluid pressure. ...................6
      2.      The videos do not show proper testing methodology. ..................................................6
      3.      The videos do not show an accused device and are therefore irrelevant. .....................7
      4.      The videos and depicted motor are not authenticated. ..................................................7
............................................................................................................................................................8

B. The Foreman declarations are inadmissible. ...............................................................................8
      1.      Mr. Foreman's declarations are based on conjecture, not personal knowledge and testing. ............................................................................................................................9
      2.      Mr. Foreman's third declaration contains inadmissible opinions. .............................10

C. The Salant declarations are inadmissible. .................................................................................11
      1.      Mud Buddy now offers new expert testimony from Dr. Salant after all applicable deadlines. ....................................................................................................................12
      2.      Dr. Salant's 2012 declaration offers only speculation. ...............................................12
      3.      Dr. Salant does not apply his opinion to an accused device. ......................................14

**ORDER** ........................................................................................................................................14

Background

Mud Buddy alleges that Gator Tail infringes two of its patents. Gator Tail moved for summary judgment based on non-infringement.[6] Mud Buddy relied on the following to oppose Gator Tail's motion: (1) a videotape of experiments conducted by Mr. Glenn Foreman, Mud Buddy's principal, testing a Mud Buddy motor and a purported Gator Tail motor; (2) declarations by Mr. Foreman, with attachments; and (3) declarations by Mud Buddy's expert, Dr. Richard Salant, with attachments. Gator Tail moved to strike each of the foregoing.[7]

This is not the first time that Gator Tail has moved for summary judgment. In response to Gator Tail's first motion, Mud Buddy submitted a declaration by Mr. Foreman, an undesignated and unqualified "expert," along with a video of experiments performed by Mr. Foreman attempting to show pressurization in a Gator Tail device.[8] Gator Tail objected to the declaration and video experiments on a number of grounds, including irregularities in Mr. Foreman's test protocol, inauthenticity, and lack of authentication of the purported Gator Tail device, in addition to Mr. Foreman's conjecture-based testimony.[9] In December 2012, the court sustained Gator Tail's objections and struck most of Mr. Foreman's original evidence from the summary judgment record, including the video experiments.[10] However, the court allowed Mud Buddy the opportunity "to provide competent and admissible evidence from Mr. Foreman showing quantitative measurement of pressure" in the accused Gator Tail devices.[11] The court

---

[6] Docket no. 153.

[7] Docket no. 178.

[8] Docket no. 98-2.

[9] Docket no. 106.

[10] This ruling was made from the bench at the conclusion of the December 14, 2012 hearing, and was later reduced to a written order at docket no. 146.

[11] Docket no. 147, entered May 1, 2013.

also denied Mud Buddy's request to allow Dr. Salant to provide additional testimony on the issue of pressurization.

Although the court gave Mr. Foreman another chance to offer a legally competent and admissible report supporting his evidence on the pressurization issue,[12] his subsequent declaration and new video experiments at issue did not correct the shortcomings of his original declaration and video experiments and raised additional deficiencies.  Mud Buddy also submitted a new declaration from Dr. Salant, notwithstanding the court's instruction that no additional evidence from Dr. Salant would be received.

A. The Foreman video experiments are inadmissible.

Mr. Foreman essentially repeated his previous experiments in the new experiments, but attempted to provide quantitative measurements of pressure as directed by the court by using an uncalibrated tube and a ruler.[13]  However, for the reasons set forth herein, Mr. Foreman's video experiments attempting to show pressure in the accused Gator Tail device are inadmissible.

"Admissibility of experimental evidence does not depend on identical actual and experimental conditions,"[14] but "[a] party offering evidence of out-of-court experiments must lay a proper foundation by showing a similarity of circumstances and conditions."[15]  Whether an experiment is admissible is within the court's discretion.[16]  To be admissible, the experiment should be conducted according to generally accepted test principles, it should be conducted in such a way as to preserve objectivity, and the party offering the experiment should show

---

[12] Docket no. 167-2 at pp. 57-58.

[13] Gator Tail's expert, Dr. King, noted several problems with Mr. Foreman's home made approach to "measuring" pressure. Docket no. 138 at 18-22.

[14] *Four Corners Helicopters, Inc. v. Turbomeca, S.A.*, 979 F.2d 1434, 1442 (10th Cir. 1992).

[15] *Jackson v. Fletcher*, 647 F.2d 1020, 1027 (10th Cir. 1981).

[16] *Four Corners Helicopters, Inc.*, 979 F.2d at 1441.

background proof that the experiment was "conducted under conditions that were at least similar to those" at issue in the suit.[18] Mr. Foreman's videotaped experiments, in which he used an altered and dissimilar product from an accused device, operated under dissimilar conditions, are inadmissible.

The circumstances associated with the Foreman video experiments do not render them reliable. Mr. Foreman performed the experiments without the participation of anyone representing Gator Tail. He is not an engineer and is not a disinterested party. Moreover, there is insufficient evidence as to:

1) what model of motors were used for Mr. Foreman's experiments;

2) the configurations and calibration of his testing equipment;

3) whether his testing protocol is generally accepted;

4) whether the circumstances of the experiments were the same or similar as intended use; and

5) whether the purported Gator Tail device tested by Mr. Foreman in the video experiments is representative of an actual Gator Tail device.

As the offeror of Mr. Foreman's video experiments, Mud Buddy bore the burden of proving their authenticity and veracity. Additionally, the experiments must be relevant to the issues in this case, specifically whether lubricant is pressurized in the accused Gator Tail device. Mud Buddy's evidence did not adequately address this question. Instead, it addressed whether purported, but unidentified, Gator Tail devices, with no safeguards to ensure that they were unmodified or had been adequately assembled, expelled lubricant when first started and operated in the air without the benefit of water cooling or water pressure acting on the devices, contrary to the devices' intended use.

---

[18] *Brandt v. French*, 638 F.2d 209, 212 (10th Cir. 1981).

      1.     Mr. Foreman lacks expertise in designing tests to measure fluid pressure.

Despite Mr. Foreman's recitation of his education, employment, and expertise, Mr. Foreman claimed no expertise in designing tests to quantitatively measure fluid pressure. His only experience in designing tests to quantitatively measure fluid pressure occurred in this case. The court does not find Mr. Foreman qualified to design or conduct tests for measuring fluid pressure in drive assemblies.

      2.     The videos do not show proper testing methodology.

Mr. Foreman's video experiments lack indicia of objectivity. No protocol was identified ensuring that the methodology used was proper or that it had been subjected to peer review and publication.[23] Additionally, Mud Buddy made no showing that the experiments were scientifically sound or the results reliable.

Mr. Foreman's measuring device consisted of clear plastic tubing and a ruler, which Mud Buddy called a "manometer." Mr. Foreman used this tube and ruler to measure the presence of a pressure differential allegedly to the 1/1000ths of a pound per square inch. But Mud Buddy pointed to no authority, publication or peer review endorsing this equipment for use as a manometer and made no showing that using this equipment as a manometer would produce an accurate and reliable result. Absent a showing from Mud Buddy that its methodology was reliable, Mr. Foreman's evidence is inadmissible.[24]

Additionally, Mr. Foreman's testing methodology altered the Gator Tail device. Mr. Foreman drilled into the seal area to observe seal leakage, but offered no evidence that drilling into the device did not damage the seals or the Gator Tail device itself. Indeed, Mr. Foreman's

---

[23] *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993).

[24] *See generally, Daubert*, 509 U.S. 579 (1993).

alteration of the Gator Tail device without any scientific assurances that the alteration would not affect the results of the test render his testing methodology unreliable.

       3.       The videos do not show an accused device and are therefore irrelevant.

Mud Buddy alleges its patents are infringed by Gator Tail models GT23, GT35, GT27, GTR23 and GTR35. There was no indication in the videos or in Mr. Foreman's declarations as to which model was the subject of the experiment in the videos.[25] A video of an unknown part has no relevance as to the features of the accused devices. Mud Buddy failed to establish any connection or relevance between the model in the videos and the accused devices.

       4.       The videos and depicted motor are not authenticated.

A party offering evidence must show that the evidence is genuine by authenticating it. Authentication is an aspect of relevancy that is a condition precedent to admissibility of the evidence.[26] Rule 901 of the Rules of Evidence provides that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is,"[27] at which point a sufficient foundation for the introduction of evidence has been laid.

Though "[a]dmissibility of experimental evidence does not depend on identical actual and experimental conditions,"[28] experiments should be supported "by showing background proof that the experiments were conducted under conditions that were at least similar to those" at issue in the suit.[29]

---

[25] Docket no. 98-2; docket no. 123; docket no. 167-13.

[26] *United States v. Lauder*, 409 F.3d 1254, 1264 n.6 (10th Cir. 2005).

[27] Fed.R.Evid. 901.

[28] *Four Corners Helicopters, Inc.*, 979 F.2d at 1442.

[29] *Brandt*, 638 F.2d at 212.

The purported Gator Tail drive assembly in the videos was not mounted and run on a Gator Tail motor frame.[30]  Instead, a Gator Tail lower assembly had been separated from a Gator Tail motor and re-mounted on a Mud Buddy frame.[31]  The alleged Gator Tail motor in the video also had no self-authenticating trade inscription under Federal Rule of Evidence 902(7).  Under Rule 902(7), evidence with an "inscription, sign, tag, or label purporting to have been affixed in the course of business and indicating origin, ownership, or control" is self-authenticating and requires no extrinsic evidence of authenticity to be admitted.[32]  No inscription was shown in the video evidencing that the drive motor depicted in the videotaped experiments was a Gator Tail device.

Based on the foregoing, Mud Buddy's video experiments, which purport to show part of a Gator Tail motor that had been permanently altered by Mud Buddy's drilling, and which was attached to a non-Gator Tail body, are not reliable, trustworthy, or helpful to the trier of fact, and are therefore inadmissible.

B.     The Foreman declarations are inadmissible.

Mr. Foreman has submitted three declarations, two of which are addressed in this order – his January 11, 2013 declaration[36] and his June 7, 2013 declaration.[37]  For the reasons set forth herein, except for those sections of his declarations discussing the history and design of the Mud Buddy motors, Mr. Foreman's declarations are inadmissible and therefore stricken.

---

[30] Docket no. 106-5 at p. 1.

[31] *Id.*

[32] Fed. R. Evid. 902(7); *see also ACCO Brands, Inc. v. PC Guardian Anti-Theft Prods, Inc.*, 592 F. Supp. 2d 1208, 1219 (N.D. Cal. 2008) (finding that computers are self-authenticating because they are inscribed with the brand trade name).

[36] Docket no. 123.

[37] Docket no. 167-13.

        1.        Mr. Foreman's declarations are based on conjecture, not personal knowledge and testing.

Mr. Foreman offers several opinions on the internal workings of the accused device, specifically with respect to how the lubricant and seals interact. However, these opinions are conjecture and speculation, and are not based on personal knowledge and testing. Mr. Foreman's deduction that lubricant must move past the seal as a result of some unproven pressure—allegedly because of bearing pumping, seal pumping, or thermal expansion—without direct measurements and without controlled testing, was mere conjecture and speculation that failed to address other possible causes. As Gator Tail argued, the lubricant could (1) flow as a result of gravity, (2) flow because Mr. Foreman overfilled the drive unit before starting it, or (3) flow past the first seal due to damage caused by drilling. The '750 patent specifically states: "Hydraulic pressure is generated on the lower end of the bearing due to its accelerated rotation and slope."[40] The patents also state that even without Mr. Foreman's pressurization, the conventional configuration in the prior art tended to lose lubrication because of leakage.[41] Thus, as suggested by Gator Tail, there is no admissible evidence that lubricant flow is not just as attributable to other causes as it is to any bearing pumping action. Mr. Foreman never repeated his experiments with control sets or test variables to eliminate other potential causes of lubricant flow. Accordingly, his testing does not aid in the conclusion about the presence of pressure differential in the Gator Tail accused devices and its cause.

Additionally, Mud Buddy has identified at least three theories of where pressure comes from: (1) roller bearing pumping, (2) seal pumping, (3) and heat expansion. There is no evidence that Mr. Foreman isolated the roller bearing action to see how much pumping the roller

---

[40] Docket no. 153-1 at col. 2, line 61; col. 5, line 30.

[41] Id. at col. 1, lines 58-59, col. 2, lines 26-29.

9

bearing generated. Similarly, there is no evidence that he measured how much pressure generation is attributable to the seal. There is also no evidence that he measured how much expansion is due to heat. Mr. Foreman's experiments did not account for the temperature of the grease used in the experiments, offered no data on the grease's rate or coefficient of expansion, did not address how this heat is affected by immersing the unit in water during normal operation, and did not address the apparent contradiction between the patents (complaining of heat as a destroyer of bearings and seals) and his current theory (using heat as a desirable seal pressure generating feature). In sum, Mr. Foreman's experiments fall short of reliable and scientific methodology.

    2.    Mr. Foreman's third declaration[42] contains inadmissible opinions.

Mr. Foreman's third declaration contains numerous inadmissible new opinions. These opinions include:

1. "I believe running the test in water would not significantly alter the results of the test except that the outer seal would pump grease even less efficiently that the open-air test and would therefore result in even more pressure between the inner and outer-seals."[43]

2. "In removing the propeller, I placed a pair of bushings to replace the propeller hub next to the wear sleeve in a manner <u>that would maintain the proper positioning of the wear sleeve</u> as if the propeller hub were there."[44]

3. "Any suggestion that the fluid did not go down because the lubricant is highly viscous is incorrect. While the lubricant employed in the testing has a high viscosity at room temperature, at the temperatures (at least 85° F) indirectly observed on the motor, the lubricant is significantly less viscous."[45]

Turning to the first point, Mr. Foreman's "belief" that running the test in open-air is inconsequential is not valid evidence under Rule 702. He could have run his experiment in water

---

[42] Docket no. 167-13, filed June 7, 2013.

[43] *Id.* at ¶ 3.

[44] *Id.* at ¶ 4.

[45] Docket no. 167-13 at ¶ 5.

to show that the absence of water was inconsequential. Mr. Foreman mentioned having a "test tank," where he can run an engine "for hours after adding abrasive materials to the run medium,"[46] but despite having the ability to recreate proper test conditions, Mr. Foreman failed to do so. Mr. Foreman did not explain how running the test in water would not affect the results of his test in light of his claim that thermal expansion is a crucial part of how his invention generates pressure.

Second, assembly of the purported Gator Tail device was not shown in the video experiments. Absent any corroborating evidence that the purported Gator Tail device tested in the video experiments was accurately assembled, Mr. Foreman's claim is unsubstantiated inadmissible opinion testimony.

Finally, regarding the viscosity of the lubricant, Mr. Foreman used a formula in an effort to calculate pressure. However, Gator Tail's expert stated that the formula only works for Newtonian fluids.[47] The Material Safety Data Sheets for the lubricant used by Mr. Foreman in the experiments showed that it is a semi-solid, not a Newtonian fluid.[48] Mr. Foreman offered no valid proof of the lubricant being a Newtonian fluid at the temperature he claimed existed during the experiment, and thus his calculations are not reliable.

For all of the foregoing reasons, the portions of Mr. Foreman's declarations in which he offers opinion testimony are inadmissible.

C.  The Salant declarations are inadmissible.

Mud Buddy also offered a new declaration from Dr. Salant. It is stricken for the reasons set forth below.

---

[46] Docket no. 123 at ¶ 15.
[47] Docket no. 138 at p. 20.
[48] Docket no. 123-3 at p. 3.

1. Mud Buddy now offers new expert testimony from Dr. Salant after all applicable deadlines.

At the previous summary judgment hearing, Mud Buddy inquired whether it could submit more testimony from Dr. Salant on the issue of pressurization. The court held that it would not be receiving more evidence from Dr. Salant. Despite this, Mud Buddy offered a new declaration from Dr. Salant in support of its opposition to Gator Tail's renewed motion for summary judgment. Because the new declaration from Dr. Salant was untimely and was submitted contrary to the court's order, Dr. Salant's declaration is stricken.

2. Dr. Salant's 2012 declaration offers only speculation.

In its opposition to Gator Tail's Motion for Summary Judgment, Mud Buddy relies largely upon a few conclusory statements by Dr. Salant.[49] First, Mud Buddy offered Dr. Salant's contention that two seals in the Gator Tail device, both facing the prop, would still create a pressurization chamber because the outer seal would not "pump" as efficiently as the inner seal.[50] His reasoning for this was that the contaminants outside of the outer seal would cause that seal to wear and not "pump" from the transom to the prop as efficiently as it did before, thereby trapping lubricant. However, Dr. Salant performed none of his own testing and relied largely on Mr. Foreman's unreliable and inadmissible videotaped experiments and related opinions to support his opinions. Dr. Salant cited no treatises, experiments, or direct observations of this phenomenon in an accused device.

Dr. Salant also attempted to bolster Mr. Foreman's experiments by stating in his latest declaration that Mr. Foreman's "experiment" is valid. However, Dr. Salant neither verified the results of Mr. Foreman's experiments nor did he say the results were accurate. Instead, he

---

[49] Docket no. 167 at pp. 29-30.

[50] Docket no. 167-8 at ¶ 5.

simply stated that Mr. Foreman's "reasoning and methodology" was "sound," which is an inadmissible conclusion.[52] Although Dr. Salant endorsed the use of a manometer to measure pressure,[54] he never stated Mr. Foreman's tube and ruler constituted a manometer, nor did he state that Mr. Foreman's technique was accurate. Mr. Foreman's uncalibrated tube and ruler device was not shown to be a manometer, much less one capable of measuring pressure to the thousandths of a PSI of accuracy.

Finally, on the issue of pressure and Mud Buddy's various theories related to the cause of pressure, Dr. Salant never said "elastohydrodynamic pressure"—where the bearing meets the race—creates any large scale pressure or pressurizes the system, instead stating that the effect was in an area of "microns."[56] In his 2013 declaration, he stated that an operating bearing will have friction, generate heat, and that this can increase pressure. But he offered no proof of actual temperature or pressure increase inside an accused device. Dr. Salant has also taken several inconsistent positions regarding the cause of pressure generation and the functionality of the outer seals. The court finds that Dr. Salant's testimony on this point is unsubstantiated speculation. Dr. Salant's opinion fails to support a finding that roller bearings generate hydraulic pressure.

---

[52] *McCollin v. Synthes Inc.*, 50 F. Supp. 2d 1119, 1127 (D. Utah 1999) (granting summary judgment where the opposing expert "[did] not provide any explanation for how he ruled out these other potential causes to arrive at his conclusion that the Danek implant caused the pain. Without proper grounding in valid scientific methodology, Dr. Yarus's conclusions are speculative, at best. Dr. Yarus's testimony is unreliable and would not be admissible at trial under the standards set forth by the Supreme Court in Daubert and Kumho Tire. Dr. Yarus's conclusory speculations therefore fail to create an issue of material fact sufficient to withstand Danek's motion for summary judgment").

[54] A manometer is an instrument to measure pressure by measuring a column of fluid, usually water or mercury. Docket no. 123-1 at p. 11.

[56] Docket no. 167-6 at p. 24 (depo. p. 91, line 14).

3.     Dr. Salant does not apply his opinion to an accused device.

While there is evidence that Dr. Salant has examined and is aware of a Gator Tail lower end unit, Mud Buddy has not shown Dr. Salant's opinions are properly applied to the devices at issue in this case. Without some nexus between his data and the accused Gator Tail devices at issue, Dr. Salant's testimony is speculative, irrelevant, and should be stricken.

## ORDER

For these reasons, the Court sustains Gator Tail's objections and

- Strikes Mr. Foreman's October 1, 2012 declaration and exhibits thereto, re-offered in [docket no. 167](docket no. 167) and incorporated by reference into Mr. Foreman's January 11, 2013 declaration ([docket no. 123](docket no. 123)) excepting those portions that were deemed admissible in the Court's Order in [docket no. 146](docket no. 146);

- Strikes Mr. Foreman's January 11, 2013 declaration ([docket no. 123](docket no. 123)) and exhibits thereto in its entirety, except for paragraphs 1-13, the first seven (7) lines of paragraph 15, and paragraph 16.

- Strikes Mr. Foreman's June 7, 2013 declaration ([docket no. 167-13](docket no. 167-13)) excepting paragraphs 1, 2, the first sentence of paragraph 3, the first four (4) sentences of paragraph 4, the first line of paragraph 5, and paragraph 6.

- Strikes any of Dr. Salant's October 1, 2012 declaration incorporated by reference into Dr. Salant's June 7, 2013 declaration ([docket no. 167-8](docket no. 167-8)), excepting those portions that were deemed admissible in the Court's Order in [docket no. 146](docket no. 146); and

- Strikes Dr. Salant's June 7, 2013 ([docket no. 167-8](docket no. 167-8)) declaration in its entirety.

IT IS SO ORDERED.

Dated September 26, 2013.

BY THE COURT:

_____
David Nuffer
United States District Judge
